1  STACEY M. LEYTON (203827)
   EILEEN B. GOLDSMITH (218029)
2  JUHYUNG HAROLD LEE (315738)
   ALTSHULER BERZON LLP
3  177 Post Street, Suite 300
   San Francisco, CA 94108
4  Telephone: (415) 421-7151
   Facsimile: (415) 362-8064
5  E-mail: sleyton@altber.com
           egoldsmith@altber.com
6          hlee@altber.com

7  BENJAMIN L. KING (*pro hac vice forthcoming*)
   MCKNIGHT, CANZANO, SMITH,
8     RADTKE & BRAULT, P.C.
   3950 West 11 Mile Road
9  Berkley, MI 48072
   Telephone: (248) 354-9650
10 Facsimile: (248) 354-9656
   E-mail: bking@michworkerlaw.com

11
   *Attorneys for Defendants*
12    *UAW and UAW Local 230*

13
                    UNITED STATES DISTRICT COURT
14
                  CENTRAL DISTRICT OF CALIFORNIA
15

16 FCA US LLC,                            Case No.: 5:24-cv-02123-KK-DTB

17             Plaintiff,                 **MEMORANDUM OF POINTS AND
                                          AUTHORITIES IN SUPPORT OF
18      v.                                DEFENDANTS INTERNATIONAL
                                          UNION, UNITED AUTOMOBILE,
19 INTERNATIONAL UNION, UNITED            AEROSPACE AND AGRICULTURAL
   AUTOMOBILE, AEROSPACE AND              IMPLEMENT WORKERS OF
20 AGRICULTURAL IMPLEMENT                 AMERICA (UAW) AND UAW LOCAL
   WORKERS OF AMERICA (UAW)               230'S MOTION FOR JUDGMENT ON
21 and UAW LOCAL 230,                     THE PLEADINGS**

22             Defendants.                Hearing Date:   January 30, 2025
                                          Time:           9:30 a.m.
23                                        Judge:          Hon. Kenly Kiya Kato
                                          Courtroom:      Courtroom 3
24
                                          Action Filed:   October 3, 2024
25

26

27

28

1

# TABLE OF CONTENTS

2   TABLE OF AUTHORITIES...................................................................3

3   INTRODUCTION..................................................................................7

4   BACKGROUND....................................................................................9

5       I.    Relevant Provisions of CBA and UAW Constitution........................9

6       II.   The Unions' Response to Stellantis's Failure to Honor Letter 311 ..................10

7   LEGAL STANDARD ..........................................................................11

8   ARGUMENT .......................................................................................12

9       I.    Stellantis's claims are not properly before this Court.......................12

10          A. There is no jurisdiction under section 301....................................12

11          B. Stellantis's claim regarding the Unions' authority to engage in a
            potential, future strike is also unripe............................................15

12
13              1.   The alleged controversy between the parties is neither immediate
                nor concrete. ..........................................................................16

14              2.   Stellantis's claim is not fit for judicial decision, and Stellantis would
                not face direct and immediate hardship without judicial intervention....18

15
16          C. The Court should otherwise decline to issue declaratory relief..................19

        II.   In any event, Stellantis's claims are meritless on their face because the
17          CBA as well as statutory and constitutional law give the Unions the right to
            speak about Letter 311, to file grievances over Letter 311, and to strike if
18          those grievances are not resolved to their satisfaction.....................22

19   CONCLUSION ....................................................................................25

20   CERTIFICATE OF COMPLIANCE ..................................................27

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*18 Unnamed John Smith Prisoners v. Meese,*
871 F.2d 881 (9th Cir. 1989).........................................................................18

*Addington v. U.S. Airline Pilots Ass'n,*
606 F.3d 1174 (9th Cir. 2010)...............................................................18, 19

*Alexander v. United States,*
509 U.S. 544 (1993) .........................................................................22

*Allis-Chalmers Corp. v. Lueck,*
471 U.S. 202 (1985) .........................................................................24

*Argonaut Ins. Co. v. St. Francis Med. Ctr.,*
17 F.4th 1276 (9th Cir. 2021) .........................................................20

*Aydin Corp. v. Union of India,*
940 F.2d 527 (9th Cir. 1991) ...................................................17, 19

*Burlington N. R. Co. v. Bhd. of Maint. of Way Emps.,*
481 U.S. 429 (1987) .........................................................................21

*Burlington N. Santa Fe Ry. Co. v. Int'l Bhd. of Teamsters Loc. 174,*
203 F.3d 703 (9th Cir. 2000) (en banc), *as amended* (Mar. 8, 2000)...........................20

*Consol. Rail Corp. v. Bhd. of Maint. of Way Emps.,*
847 F. Supp. 1294 (E.D. Pa. 1994) ...............................................17

*Curtis Pub. Co. v. Butts,*
388 U.S. 130 (1967) (plurality opinion)..........................................25

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council,*
485 U.S. 568 (1988) .........................................................................22

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
896 F.2d 1542 (9th Cir. 1989)........................................................11

*Int'l Ass'n of Machinists v. Street,*
367 U.S. 740 (1961) .........................................................................20

*Linn v. United Plant Guard Workers of Am., Loc. 114,*
383 U.S. 53 (1966) ...........................................................................22

**Page(s)**

**Federal Cases (continued)**

*Loc. 3-7, Int'l Woodworkers of Am. v. DAW Forest Prod. Co.*,
    833 F.2d 789 (9th Cir. 1987)..........................................................................24

*Marine Cooks & Stewards, AFL v. Panama S. S. Co.*,
    362 U.S. 365 (1960) ................................................................................20

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ................................................................................16

*Metro. Edison Co. v. N.L.R.B.*,
    460 U.S. 693 (1983) ................................................................................25

*Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*,
    239 F.3d 172 (2d Cir. 2001) ....................................................................22

*Murray Energy Holdings Co. v. Mergermarket USA, Inc.*,
    No. 2:15-CV-2844, 2016 WL 3365422 (S.D. Ohio June 17, 2016) ...........21

*N.L.R.B. v. Allis-Chalmers Mfg. Co.*,
    388 U.S. 175 (1967) ................................................................................25

*N.L.R.B. v. Erie Resistor Corp.*,
    373 U.S. 221 (1963) ................................................................................25

*Nationwide Mut. Ins. Co. v. Liberatore*,
    408 F.3d 1158 (9th Cir. 2005) .................................................................15

*Nu Image, Inc. v. Int'l All. of Theatrical Stage Emps.*,
    893 F.3d 636 (9th Cir. 2018) .................................................12, 13, 14, 15

*Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers v. Austin*,
    418 U.S. 264 (1974) ................................................................................25

*Org. for a Better Austin v. Keefe*,
    402 U.S. 415 (1971) ................................................................................22

*People of Vill. of Gambell v. Babbitt*,
    999 F.2d 403 (9th Cir. 1993) ...................................................................19

*Reno v. Cath. Soc. Servs., Inc.*,
    509 U.S. 43 (1993) ..................................................................................15

| | Page(s) |
|---|---|

**Federal Cases (continued)**

*St. Clair v. City of Chico*,
   880 F.2d 199 (9th Cir. 1989) .......................................................................11

*Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto.,*
   *Aerospace, Agric. Implement Workers of Am., Int'l Union*,
   523 U.S. 653 (1998) ...................................................................12, 14, 15

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) (en banc) ................................................16

*Twitter, Inc. v. Paxton*,
   56 F.4th 1170 (9th Cir. 2022) ..................................................................16

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ..............................................................11, 23

*United Steelworkers of Am. v. Am. Mfg. Co.*,
   363 U.S. 564 (1960) ..................................................................................24

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
   363 U.S. 574 (1960) ..................................................................................24

*Univ. of Chicago v. Fac. Ass'n of Univ. of Chicago Lab. Sch., Loc. 2063*,
   No. 10 C 4843, 2011 WL 13470 (N.D. Ill. Jan. 4, 2011) ........................21

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ..................................................................................20

*Wolfson v. Brammer*,
   616 F.3d 1045 (9th Cir. 2010) ..............................................................15, 16

**Federal Statutes**

28 U.S.C. §2201 .....................................................................................15, 20

29 U.S.C. §104 ...........................................................................................21

29 U.S.C. §185 ....................................................................................8, 12, 14

29 U.S.C. §157 ...........................................................................................25

**Federal Rules and Regulations**

Federal Rule of Civil Procedure 12(c)...........................................................................11, 23

## INTRODUCTION

Plaintiff FCA US LLC ("Stellantis" or "Company") is party to a collective bargaining agreement ("CBA") with Defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW").  During the most recent round of CBA negotiations, Stellantis and UAW entered into an agreement that addressed the Company's future investments in its U.S. facilities and workforce.  The terms of that agreement are memorialized in a section of the CBA entitled "Letter 311."

After UAW learned that Stellantis intended not to make certain investments as set forth in Letter 311, a number of UAW local unions—including Defendant UAW Local 230 ("Local 230")—filed grievances against the Company pursuant to the CBA's grievance procedure.  And because that procedure expressly provides that grievances over Letter 311 are *not* subject to arbitration *or* the CBA's no-strike clause, Local 230 and several other UAW locals took a preliminary step toward striking by asking their members to authorize a potential, future strike.  But UAW has not yet approved a strike by any local union, which the UAW Constitution requires before a local union may strike.  Nor has UAW provided formal notification of its intention to strike, as required by the CBA.  That notification would in turn trigger an obligation under the CBA for Stellantis and UAW to meet on seven separate days, as a further attempt to resolve the grievances.  So far, none of those seven meetings has yet occurred or even been scheduled.

Thus, there are many remaining steps that would need to occur before any strike could take place.  And at each of those steps, it is possible that UAW and Stellantis may reach some kind of resolution regarding the Letter 311 grievances.  But instead of allowing the parties' agreed-upon grievance procedure to run its course, Stellantis asks this Court to stop that process in its tracks and to *itself* resolve the grievances.  First, Stellantis seeks a declaratory judgment that Letter 311 does not impose *any* binding obligations, and so UAW and Local 230 (collectively, "Unions") cannot in the future strike over the Company's failure to make any of the investments set forth therein.

1    Second, based on its view that Letter 311 is entirely precatory, Stellantis asks for a ruling

2    that the Unions have acted in bad faith by publicly urging Stellantis to make the

3    investments described in Letter 311, filing grievances regarding Stellantis's failure to

4    make such investments, and taking an initial step toward striking over their grievances.

5    The gravamen of both of Stellantis's claims, therefore, is that the Company has not

6    violated Letter 311, and so any actions or speech suggesting the contrary is unlawful.

7         This Court lacks jurisdiction to hear such claims, and for this reason as well as

8    others should dismiss the complaint. Stellantis asserts that its claims are cognizable

9    under section 301 of the Labor Management Relations Act ("section 301"), which grants

10   federal courts subject-matter jurisdiction over "[s]uits for violation of contracts between

11   an employer and a labor organization," 29 U.S.C. §185(a). But the Ninth Circuit and

12   Supreme Court have made clear that jurisdiction lies under section 301 only when the

13   *plaintiff* alleges that the contract has been violated. Here, by contrast, the threshold

14   allegation underlying Stellantis's complaint is that *Stellantis* has *not* violated the contract.

15   Section 301 does not confer jurisdiction over such a suit.

16        Nor does section 301 confer jurisdiction to decide whether the Unions may engage

17   in a potential, future strike. In seeking a declaratory judgment that the Unions lack the

18   authority to strike over Letter 311, Stellantis does not—and cannot—allege that the

19   Unions have violated any contract provision. Rather, Stellantis alleges only that the

20   Unions *would* violate the CBA *if* they were to strike. But there is no jurisdiction under

21   section 301 to hear a claim for a hypothetical future violation of the CBA. Such a claim

22   is also unripe: Local 230 recently withdrew its grievances against the Company, and

23   even if those grievances remained active, many contingencies would have to occur before

24   the Unions could or would strike.

25        Even if the case did not suffer from these fundamental defects, dismissal would

26   still be required. The CBA plainly gives the Unions the right to file grievances regarding

27   Letter 311, and to strike if those grievances are not resolved to the Unions' satisfaction,

28   regardless of whether Stellantis (or the Court) believes those grievances are meritorious.

1   The CBA also places no restrictions on the Unions' speech about Letter 311.  Thus, it is

2   apparent from the face of the CBA, which is incorporated into Stellantis's complaint, that

3   the Unions have not violated any written or implied term of the contract.

4          The Court should dismiss Stellantis's complaint in its entirety.

5                              **BACKGROUND**

6   **I.    Relevant Provisions of CBA and UAW Constitution**

7          The parties' CBA provides two mutually exclusive methods for resolving

8   grievances, depending on the grievance's subject matter.  Under the first method, which

9   applies to most grievances, a grievance goes through three "steps" and then, if it remains

10  unresolved, is ultimately resolved through arbitration before an "Appeal Board."

11  Declaration of Stephen Stahl ("Stahl Decl."), Ex. A at 28-32.  The CBA provides that,

12  during the term of the agreement, the UAW may not strike over such grievances.  *Id.* at 7-

13  8 (prohibiting strikes "over a matter on which the Appeal Board has power, and authority

14  to rule").

15         Under the second method, grievances regarding certain enumerated matters go

16  through the same initial steps but are expressly exempted from arbitration before the

17  Appeal Board.  Stahl Decl. ¶14, Ex. A at 33 (excluding matters such as "Work

18  Standards" and "Job Security and Outside Contracting" from Appeal Board's authority).

19  This second set of grievances is also expressly excluded from the CBA's no-strike clause.

20  Stahl Decl. ¶¶14-15, Ex. A at 7-8.  Thus, the CBA gives UAW the right to engage in a

21  mid-term strike if such grievances are not resolved to UAW's satisfaction.  Stahl Decl.

22  ¶21; *see also id.* ¶¶22-23 (describing recent mid-term strikes arising under these

23  provisions).

24         As part of negotiations in 2023 for a successor CBA—and to resolve a weeks-long

25  strike by UAW arising from those negotiations—the parties agreed to "Letter 311,"

26  which committed the Company to making certain investments "to establish long-term

27  stability and job security for the U.S. workforce."  Stahl Decl. ¶¶5-8, Ex. B at 237-42.

28  While the parties "understood" that these investments were "subject to approval by the

Stellantis product Allocation Committee and contingent upon plant performance, changes in market conditions, and consumer demand," Stahl Decl. ¶8, Ex. B at 237, they also specifically agreed that any grievances over Letter 311 would *not* be subject to arbitration before the Appeal Board, and therefore could be resolved by means of a mid-term strike, Stahl Decl. ¶12, Ex. A at 33 (excluding Letter 311, as well as the parties' agreements regarding "Plant Closing and Sale Moratorium" and "Outsourcing Moratorium" from Appeal Board's authority); Compl. ¶19.

The CBA and the UAW Constitution require UAW and its local unions to complete several steps before striking over a grievance that has not been resolved in the initial three-step process. First, a local union must conduct a "strike vote," and at least two-thirds of the voting members must agree to seek strike authorization from the UAW International Executive Board. Stahl Decl. ¶18, Ex. C at 129. The UAW International Executive Board—or, in exigent circumstances, the UAW International President—must subsequently approve the strike. Stahl Decl. ¶19, Ex. C at 130. UAW must then, within 60 days of Stellantis's denial of the underlying grievance, inform Stellantis of its intention to strike. Stahl Decl. ¶14, Ex. A at 7-8. Following such notification, UAW must continue to negotiate with Stellantis on at least seven separate days. *Id.* Only then, if the seven separate meetings fail to resolve the grievance, would UAW be permitted to strike.

## II. The Unions' Response to Stellantis's Failure to Honor Letter 311

Shortly after ratification of the CBA that included Letter 311, Stellantis informed UAW that it had already decided not to make certain investments at the Company's facility in Belvidere, Illinois as promised in Letter 311. Stahl Decl. ¶24 (describing investments set to occur in 2024, 2025, and 2027). A number of UAW local unions, including Local 230, subsequently filed grievances against Stellantis regarding the Belvidere investments. *Id.* ¶25. Soon thereafter, UAW obtained information indicating that Stellantis was planning to build the next generation of the Dodge Durango sport utility vehicle outside of the United States instead of at the Company's Detroit Assembly

1  Complex as promised in Letter 311.  *Id.* ¶26.  Local 230 and other UAW local unions

2  also filed grievances over this issue.  *Id.* ¶27.

3      Local 230 and several other UAW locals proceeded to hold strike-authorization

4  votes.  *Id.* at ¶¶28, 30.  Although the members of Local 230 and a few other locals voted

5  to approve a strike, the Unions did not provide formal notification to the Company under

6  the CBA that they intended to strike, and neither the UAW International Executive Board

7  nor the UAW International President has approved a strike against the Company.  *Id.* ¶30.

8  Local 230 has since withdrawn its grievances over the Belvidere and Durango

9  investments, and most other UAW locals have withdrawn their grievances as well.  *Id.*

10  ¶28.

11                    **LEGAL STANDARD**

12      Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on

13  the pleadings" at any time "[a]fter the pleadings are closed," so long as the motion is filed

14  "early enough not to delay trial."  "Judgment on the pleadings is proper when the moving

15  party clearly establishes on the face of the pleadings"—including any documents attached

16  thereto or incorporated therein—"that no material issue of fact remains to be resolved and

17  that it is entitled to judgment as a matter of law."  *Hal Roach Studios, Inc. v. Richard*

18  *Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989); *see, e.g.*, *United States v. Ritchie*,

19  342 F.3d 903, 908 (9th Cir. 2003) (noting that "[c]ertain written instruments attached to

20  pleadings may be considered part of the pleading," but "[e]ven if a document is not

21  attached to a complaint, it may be incorporated by reference into a complaint if the

22  plaintiff refers extensively to the document or the document forms the basis of the

23  plaintiff's claim").  The Court may also properly consider extrinsic evidence to assess

24  questions of subject-matter jurisdiction—including questions of ripeness—without

25  treating the motion as a motion for summary judgment.  *See, e.g.*, *St. Clair v. City of*

26  *Chico*, 880 F.2d 199, 201-02 (9th Cir. 1989).

27

28

**ARGUMENT**

The only asserted basis for the Court's jurisdiction over this action is federal question jurisdiction pursuant to section 301.  Compl. ¶10.  Section 301 establishes a "limited jurisdictional grant" for "[s]uits for violation of contracts between an employer and a labor organization."  *Nu Image, Inc. v. Int'l All. of Theatrical Stage Emps.*, 893 F.3d 636, 642 (9th Cir. 2018) (first quotation); 29 U.S.C. §185(a) (second quotation). Stellantis alleges two causes of action purportedly arising under this provision: (1) a claim for a declaratory judgment asking the Court to declare, in advance, that any future strike over Letter 311 would be unlawful, and (2) a claim that the Unions have acted in bad faith by filing grievances pursuant to the CBA's grievance procedure, taking an initial step under the UAW Constitution toward striking, and discussing their grievances publicly.  Both claims fall outside the Court's "limited role" in enforcing collective bargaining agreements, *Nu Image*, 893 F.3d at 639, and should otherwise be dismissed.

**I.    Stellantis's claims are not properly before this Court.**

Although Stellantis styles its two causes of action as section 301 claims, neither claim seeks to remedy a violation of the CBA that has already occurred.  Rather, Stellantis's undeniable objective in bringing this suit is to obtain a judgment affirming its alleged interpretation of Letter 311, and thereby vindicate its position that it has *not* violated the CBA.  But section 301 does not permit such a claim.  Nor does Section 301 provide a judicial forum for an unripe claim regarding whether the Unions might violate the CBA in the future.  The Court thus lacks jurisdiction over Stellantis's complaint.

**A. There is no jurisdiction under section 301.**

Section 301 confers jurisdiction over suits that are filed "*because a contract has been violated.*"  *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 657 (1998) (emphasis in original).  Accordingly, the plaintiff in a section 301 action "must *first* pass through [the statute's] jurisdictional 'gateway' … by alleging a violation of contract."  *Nu Image*, 893 F.3d at 640 (emphasis in original).

Stellantis "has not crossed this initial threshold." *Id.* **First**, Stellantis's claims rest not on an allegation of a contract violation, but on Stellantis's repeated assertions that it has *not* violated the CBA itself. Despite Stellantis's artful pleading, it is apparent from the face of the complaint that Stellantis is asking the Court to rule that it need not comply with any of the allegedly "conditional" and "contingent" terms set forth in Letter 311. *See, e.g.*, Compl. ¶¶1, 6, 16, 23-24, 26-28, 31, 33, 36, 42-44. Although Stellantis purports to seek a judgment declaring that the Unions cannot strike and have acted in bad faith, it necessarily asks the Court to decide, as a predicate matter, that Letter 311 does not impose any mandatory obligations upon the Company. *See* Compl. ¶¶36, 38, 40, 42-43.

However, binding authority establishes that Stellantis cannot invoke section 301 for this purpose. In *Nu Image*, the Ninth Circuit considered whether section 301 conferred jurisdiction to hear an employer's claim alleging that a union had engaged in intentional and negligent misrepresentation by inducing the employer to enter into certain terms in a collective bargaining agreement. 893 F.3d at 638. The employer sought a declaratory judgment that those terms "do not apply" to the employer. *Id.* at 641 (quoting complaint). Affirming the district court's conclusion that it lacked section 301 jurisdiction over such a claim, the Ninth Circuit explained that an action "seeking … relief" from "an *accusation* of a contract violation by [the union]" is not itself a suit for violation of a contract within the meaning of section 301. *Id.* at 640-41 (emphasis in original).

Stellantis seeks the same relief here that the court rejected in *Nu Image*. Tellingly, Stellantis does not seek an award of damages arising from any breach of the CBA that may have already occurred, which would be the typical remedy for any such breach. *See* Compl. at 13-14 (prayer for relief). Instead, the primary remedy requested by Stellantis is a judicial declaration that "the pending grievances expressly conflict with Letter 311 and that Defendants cannot ignore the plain language of Letter 311." Compl. at 13 ¶2. Along the same lines, Stellantis also asks the Court to award damages for "the substantial

1  economic harm that *would be* caused by any work stoppage" based on Local 230's

2  grievances—in effect, a future-oriented declaration that Stellantis is not violating Letter

3  311 and so any future strike would violate the CBA.  Compl. at 13 ¶4 (emphasis added).

4  Like the employer in *Nu Image*, therefore, what Stellantis ultimately seeks is relief from

5  the Unions' accusation that it has violated Letter 311.  But section 301 does not grant

6  jurisdiction over suits seeking such relief.[1]

7        ***Second***, in seeking declaratory relief regarding the Unions' authority to engage in a

8  mid-term strike (as well as hypothetical future damages), Stellantis alleges only that the

9  Unions *may* violate the CBA in the future, *if* they actually were to strike.  *See, e.g.*,

10  Compl. ¶¶37-38 (acknowledging that the Unions have only "threaten[ed] to strike");

11  Compl. at 13 ¶4 (seeking damages only for alleged harm that "would" occur if the

12  Unions went on strike in the future).  Again, however, section 301 provides jurisdiction

13  for "[s]uits *for* violation of contracts."  29 U.S.C. §185(a) (emphasis added).  As the

14  Supreme Court has explained, "[i]n [the section 301] context, the word 'for' has an

15  unmistakably backward-looking connotation, *i.e.*, '[i]ndicating the cause, motive, or

16  occasion of an act, state, or condition; hence, because of; on account of; in consequence

17  of; as the effect of; for the sake of; as, cursed himself *for* showing leniency.'"  *Textron*,

18  523 U.S. at 657 (emphases in original).  Accordingly, section 301 confers jurisdiction

19  only over suits that have been "filed *because a contract has been violated*," not suits

20  "filed 'with a view to' a future contract violation."  *Id.* (comparing a suit for violation of

21  contract to "a suit '*for* unfair competition,'" which "is one filed because unfair

22

23

---

24      [1] Nor do the Unions' grievances supply the requisite allegation of a contract

violation.  In *Nu Image*, the Ninth Circuit rejected the employer's argument that the

25  district court had jurisdiction over a suit arising from "the fact that [the union] accused

[the employer] of violating the … CBA."  893 F.3d at 638; *see also id.* ("Nu Image

26  argues that the LMRA grants a district court jurisdiction to hear any case in which a

party, or third party, has alleged a violation of a CBA.").  The court reasoned that such a

27  suit is not brought "*because a contract has been violated*," but because the employer

believes it has *not* violated the contract.  *Id.* at 641 (quoting *Textron*, 523 U.S. at 657).

28  Accordingly, the court agreed with the union that section 301 "grants jurisdiction to hear

only those cases in which *the plaintiff* alleges a claim based on a violation of a CBA."  *Id.*

at 638 (emphasis added).

competition has [already] occurred" (emphasis in original)).[2]  Because section 301 thus provides no basis for determining whether the CBA prohibits the Unions from going on strike in the future, the Court lacks jurisdiction to make such a determination.[3]

In sum, the Court should dismiss Stellantis's complaint for lack of subject-matter jurisdiction.

**B. Stellantis's claim regarding the Unions' authority to engage in a potential, future strike is also unripe.**

Even if jurisdiction were proper under section 301, dismissal of Stellantis's claim for declaratory relief would still be required because any such claim is unripe.  "The ripeness doctrine 'is peculiarly a question of timing,' designed 'to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action.'"  *Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) (citations omitted).  Because the doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993), the Ninth Circuit has frequently described the ripeness inquiry as consisting of two components: constitutional ripeness and prudential ripeness, *see, e.g., Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).  "[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the

---

[2] In *Textron*, the Supreme Court specifically declined to hold that Section 301 confers jurisdiction for a court to determine whether an "imminent" strike constitutes a breach of the relevant CBA, *see Textron*, 523 U.S. at 663 (Breyer, J., concurring in part and concurring in the judgment) ("Unlike the Court, I would not leave the matter undecided."), and the Ninth Circuit has cautioned that *Textron* should not be over-read to stand for more than its actual holding regarding the absence of jurisdiction in that case, *see Nu Image*, 893 F.3d at 642 ("[I]t is the [Supreme] Court's holding [in *Textron*] that is ultimately binding.").  In any event, Stellantis does not allege that a strike is "imminent" here, because it could not plausibly do so.  As noted, Local 230 has withdrawn the underlying grievances; UAW has not approved a strike; the Unions have not provided formal notice to Stellantis that they are going on strike; and the parties have not even commenced, much less completed, the necessary seven days of pre-strike negotiations.

[3] The Declaratory Judgment Act, 28 U.S.C. §2201(a), "does not by itself confer federal subject-matter jurisdiction," which is why Stellantis "is required to plead an independent basis for federal jurisdiction."  *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005).  Absent such an independent basis here, Stellantis's claim necessarily fails.

standing inquiry," *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) (quoting *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003)), while the prudential inquiry "is guided by two overarching considerations: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration,'" *Thomas*, 220 F.3d at 1141 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).  Whether for constitutional reasons, prudential concerns, or both, Stellantis's claim is unripe.

**1.  The alleged controversy between the parties is neither immediate nor concrete.**

In determining the constitutional ripeness of a declaratory judgment claim, the Court considers "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  "Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues presented are 'definite and concrete, not hypothetical or abstract.'" *Wolfson*, 616 F.3d at 1058 (quoting *Thomas*, 220 F.3d at 1139).

Stellantis seeks a declaratory judgment as to whether Local 230's grievances lack sufficient merit to allow the Unions "to engage in a mid-contract strike."  Compl. ¶38.  But whether the Unions will engage in such a strike remains purely hypothetical at this point: no strike could occur unless a series of uncertain events take place, and Local 230 has actually withdrawn its grievances, compounding the uncertainty that a strike would ever occur.  Moreover, Stellantis has not even alleged that it will not—or cannot—make the promised investments that were at issue in the grievances. *See, e.g.*, Compl. ¶16 (alleging only that Letter 311's "planned future investments are subject to committee approval, and contingent upon plant performance, market conditions and consumer demands," and not alleging that such contingencies have not been met).  Thus, the alleged controversy between the parties has not even crystallized to the point where this

1 Court can reasonably discern the parties' respective positions regarding the facts

2 underlying Local 230's grievances—much less conclude that the matter will not resolve

3 through the series of additional meetings that are required before any strike can

4 commence.

5       The fact that Local 230 took certain preliminary and preparatory steps—including

6 by filing grievances and voting to authorize a strike over them, before withdrawing

7 them—fails to establish that a strike is "sufficiently immediate and real." *Aydin Corp. v.*

8 *Union of India*, 940 F.2d 527, 529 (9th Cir. 1991). In *Aydin*, the Ninth Circuit held

9 unripe a declaratory judgment claim brought by a plaintiff that was subject to a foreign

10 arbitral proceeding. Although the arbitration had already commenced, the court reasoned

11 that the plaintiff's claim for a declaratory judgment as to the enforceability of any

12 resulting award was not ripe. In doing so, the court emphasized that a "speculative and

13 remote course of events … stands between [the plaintiff] and its contemplated injury."

14 *Id.* at 528 (noting that the plaintiff might prevail in the foreign arbitration, and even if it

15 did not, the prevailing party might choose not to enforce any resulting award in the

16 United States).

17       Similarly here, several intervening events stand in the way of any strike against

18 Stellantis. As noted, Stellantis has not alleged that it will not or cannot fulfill the

19 promises it made in Letter 311. If Stellantis were to honor those commitments, then there

20 would no longer be any dispute between the parties, much less one that this Court could

21 resolve. Moreover, in order to strike, Local 230 would have to re-file its grievances

22 against Stellantis; UAW would need to authorize a strike; the Unions would have to

23 inform Stellantis in writing of their intention to strike; *and* the parties would then need to

24 meet for further negotiations on seven separate days *and* fail to reach a resolution during

25 the course of those negotiations. Unless and until the Unions choose to take such steps—

26 which might well yield a resolution to the parties' still-developing dispute—the alleged

27 controversy remains too abstract and speculative for the Court to address. *Cf., e.g.,*

28 *Consol. Rail Corp. v. Bhd. of Maint. of Way Emps.*, 847 F. Supp. 1294, 1303 (E.D. Pa.

1994) (explaining, in denying motion for strike injunction under Railway Labor Act, that "[a] court must … find sufficient indicia of an intended job action in a current dispute," and that "[t]he best evidence of such an intention is the ultimatum of a strike date").

### 2. Stellantis's claim is not fit for judicial decision, and Stellantis would not face direct and immediate hardship without judicial intervention.

In considering the ripeness of claims arising from a collective bargaining agreement, the Ninth Circuit has also examined two prudential concerns: "the fitness of the issues for judicial decision," and "the hardship to the parties of withholding court consideration." *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1211-12 (9th Cir. 2006) (en banc) (plurality opinion)). "A question is fit for decision when it can be decided without considering 'contingent future events that may or may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Cardenas v. Anzai*, 311 F.3d 929, 934 (9th Cir. 2002)); *see also 18 Unnamed John Smith Prisoners v. Meese*, 871 F.2d 881, 883 (9th Cir. 1989) (explaining that when threatened injury has yet to occur, injury must be "certainly impending" for claim to be ripe). As for the hardship requirement, "a litigant must show that withholding [judicial] review would result in direct and immediate hardship and would entail more than possible financial loss." *Addington*, 606 F.3d at 1180 (internal quotations omitted) (quoting *Winter v. Cal. Med. Rev., Inc.*, 900 F.2d 1322, 1325 (9th Cir. 1990)).

Stellantis fails to satisfy either of these prudential concerns. First, as discussed above, the Court cannot resolve Stellantis's claim without considering events that are uncertain to occur as alleged, if they occur at all. *Addington* is instructive on this point. That case involved a claim that a pilots union had violated its duty of fair representation to certain members in the course of bargaining contractual seniority rules with the employer. *Id.* at 1177-78. Although the union had already made an offer at the table that appeared to violate its duty, the court nevertheless held that the claim was unripe, because it was not certain whether the challenged proposal would be accepted by the employer or

1  whether the union's members would ratify a CBA containing that proposal. *See id*. at

2  1179-80 ("Not until the airline responds to the proposal, the parties complete

3  negotiations, and the membership ratifies the CBA will the [plaintiffs] actually be

4  affected by [the union's] seniority proposal—whatever [the union's] final proposal

5  ultimately is.").

6    Similarly here, Stellantis will not suffer its alleged injury unless and until the

7  Company insists that it will not make the investments set forth in Letter 311; Local 230

8  re-files its grievances against the Company; Stellantis fails to resolve those grievances to

9  Local 230's satisfaction; and the Unions take all of the necessary steps required for a

10  strike, including meeting with Stellantis on seven separate days in a final effort to reach a

11  deal, and then failing to resolve the matter.  As these "contingencies make [Stellantis's]

12  claim speculative," the claim is "not yet fit for judicial decision." *Id*. at 1180.

13    Second, Stellantis also fails to show that it faces "direct and immediate hardship"

14  absent its requested relief.  Stellantis's complaint is devoid of any allegation that it would

15  suffer any specific harm it if the Unions were to strike.  Moreover, because the Unions

16  remain several significant steps removed from a potential strike, there can be no apparent

17  "harm that would flow from declining to pass on the merits of [Stellantis's] claim[]

18  today." *People of Vill. of Gambell v. Babbitt*, 999 F.2d 403, 408 (9th Cir. 1993).

19    While Stellantis might "find a favorable declaration helpful" for its own strategic

20  purposes, a declaration's "[p]ractical usefulness" is not a material factor in the ripeness

21  inquiry.  *Aydin*, 940 F.2d at 529 (declining to issue a declaratory judgment even where

22  doing so might "persuade [the defendant] to settle the dispute," because "it is not the

23  function of the federal courts to crystallize the litigation strategies of parties whenever

24  asked to do so").  Thus, regardless of whether Stellantis may *benefit* from a declaratory

25  judgment, it does not stand to *suffer* any direct and immediate harm in the absence of

26  such relief.  Stellantis's declaratory judgment claim is therefore unripe.

27  **C. The Court should otherwise decline to issue declaratory relief.**

28    Stellantis's request for declaratory relief is governed by the Declaratory Judgment

Act, which provides that "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a) (emphasis added). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Accordingly, even where a court may have jurisdiction over a declaratory judgment claim, the "court is 'under no compulsion to exercise [such] jurisdiction.'" *Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276, 1280 (9th Cir. 2021) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). Rather, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Wilton*, 515 U.S. at 287 (quoting *Wycoff*, 344 U.S. at 243); *see also id.* (noting "the unique breadth of this discretion to decline to enter a declaratory judgment").

In addition to the considerations discussed above (which are dispositive), there are at least two other reasons for the Court to decline to assert its jurisdiction here.

***First***, the relief that Stellantis seeks would be an end-run around the well-established prohibition on labor injunctions. As Stellantis is no doubt aware, federal law has long "expresse[d] a basic policy against the injunction of activities of labor unions." *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 772 (1961). "[T]o prevent the federal courts from using their powers to weaken unions and cripple striking workers," Congress enacted the Norris-LaGuardia Act, 29 U.S.C. §§101-115, which largely "strip[s] the federal courts of jurisdiction to enjoin labor disputes." *Burlington N. Santa Fe Ry. Co. v. Int'l Bhd. of Teamsters Loc. 174*, 203 F.3d 703, 707-09 (9th Cir. 2000) (en banc), *as amended* (Mar. 8, 2000); *see also Marine Cooks & Stewards, AFL v. Panama S. S. Co.*, 362 U.S. 365, 369 (1960) ("Congress was intent upon taking the federal courts out of the labor injunction business …."). Among other things, the Norris-LaGuardia Act

"enumerates specific acts that shall not be subject to any restraining order or injunction," including "[c]easing or refusing to perform any work" and "[g]iving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence." *Burlington N. R. Co. v. Bhd. of Maint. of Way Emps.*, 481 U.S. 429, 437 (1987) (quoting 29 U.S.C. §104(a), (e)).

Although Stellantis purports to seek only a declaration that the Unions "cannot ignore the plain language in Letter 311 and that the pending grievances do not authorize Defendants to engage in a mid-contract strike," Compl. ¶38; *see also* Compl. at 13 ¶¶1-2, such relief is aimed at preventing the Unions from striking and otherwise expressing its views regarding Letter 311. *See Murray Energy Holdings Co. v. Mergermarket USA, Inc.*, No. 2:15-CV-2844, 2016 WL 3365422, at *8 (S.D. Ohio June 17, 2016) ("[A]lthough a declaratory judgment from this Court would not technically be an injunction, by making the [complained-of conduct] unlawful, it would operate as such."). Rather than countenance the Company's efforts to plead around the Norris-LaGuardia Act, the Court should exercise its discretion to deny Stellantis's request for declaratory relief. *See Univ. of Chicago v. Fac. Ass'n of Univ. of Chicago Lab. Sch., Loc. 2063*, No. 10 C 4843, 2011 WL 13470, at *3 (N.D. Ill. Jan. 4, 2011) ("[E]ven if the Norris-LaGuardia Act did not prohibit the ... declaratory judgment the [plaintiff] seeks, the court would exercise its discretion under the Declaratory Judgment Act ... to decline to issue the declaration at this juncture.").

**Second**, Stellantis's requested relief would also have the effect of restraining the Unions' speech in violation of the First Amendment. Again, the Company's claims are expressly directed at "argu[ments]" the Unions have allegedly made "in public pronouncements, in their CBA grievances, and ... in threatening to strike" over Letter 311, Compl. ¶37, which Stellantis alleges are "contrary to the parties' CBA," Compl. ¶6; *see also* Compl. ¶44 (alleging that the Unions' "publicity campaign" is also unlawful). To support these claims, Stellantis further points to alleged public statements made by

1    UAW on a website, to news outlets, on social media, and even in a speech at the

2    Democratic National Convention.  *See* Compl. ¶¶21-23.  Thus, by requesting an order

3    broadly declaring that the Unions "cannot ignore the plain language in Letter 311,"

4    Compl. ¶38, Stellantis is undeniably seeking to prohibit the Unions from continuing to

5    express their views on the proper interpretation of Letter 311.  Not only would such a

6    "judicial order[] *forbidding* certain communications" be a "classic example[]" of a prior

7    restraint, *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis in original)

8    (quoting Melville Nimmer, *Nimmer on Freedom of Speech* § 4.03 (1984)), but it would

9    also undermine the "special breadth of protection [afforded by the Supreme Court] to

10   union speech that publicizes labor conflicts," *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel*

11   *Emps. & Rest. Emps. Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001); *see, e.g.*, *Linn v.*

12   *United Plant Guard Workers of Am., Loc. 114*, 383 U.S. 53, 58, 65 (1966) (recognizing

13   that "[l]abor disputes are ordinarily heated affairs" and permitting state defamation

14   claims involving labor speech only where such speech is made with actual malice).

15   Because Stellantis cannot carry the "heavy burden of showing justification for the

16   imposition of such a restraint," the Court should decline to grant the Company's

17   requested relief.  *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971); *see also,*

18   *e.g.*, *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485

19   U.S. 568, 588 (1988) (declining to treat certain labor speech activity as unlawful to avoid

20   "passing on the serious constitutional questions that would be raised" by such

21   prohibition).

22   **II.    In any event, Stellantis's claims are meritless on their face because the CBA as**
     **well as statutory and constitutional law give the Unions the right to speak**
23   **about Letter 311, to file grievances over Letter 311, and to strike if those**
     **grievances are not resolved to the Unions' satisfaction.**
24
         Even if Stellantis's claims were properly before the Court (which they are not), it is
25
26   apparent from the face of the complaint and the CBA, which is incorporated into the

27

28

complaint, that the Company's claims must fail.[4]

*First*, the CBA gives the Unions the broad and unconditional right to file grievances against the Company, including grievances over Letter 311.  *See, e.g.*, Stahl Decl., Ex. A at 27 (providing that "management will answer in writing *any* grievance presented to it in writing by the Union" (emphasis added)).

*Second*, the CBA also gives the Unions the right to resolve grievances over Letter 311 by striking, and nothing in the CBA conditions that right upon what Stellantis (or this Court) may think about those grievances.  *See id.* at 7-8, 33.  Although Stellantis repeatedly suggests that Letter 311 bars the Unions from filing grievances and striking over those grievances, nothing in Letter 311 actually alters the Unions' rights to engage in such conduct.  *See* Stahl Decl., Ex. B at 237-42.  In fact, Letter 311 says nothing at all about grievances or strikes.  *See id.*  Rather, the Unions' rights in these regards are governed by the CBA's grievance procedure and no-strike clause.  *See* Stahl Decl., Ex. A at 7-8, 27-39.  As noted, the grievance procedure allows the Unions to file grievances over any subject.  The no-strike clause only prohibits strikes over matters under the authority of the Appeal Board, and the parties expressly agreed to exclude grievances over Letter 311 from the Appeal Board's authority.  And while the Unions flatly disagree with Stellantis's characterization of Local 230's grievances as lacking merit, neither the grievance procedure nor the no-strike clause conditions the Unions' right to strike on the relative merits of the underlying grievance.

Thus, so long as the Unions follow the procedural steps set forth in the CBA, the CBA specifically provides that they may strike over Letter 311 during the term of the current contract (and, of course, the Unions would need to complete the further steps required by the UAW Constitution before any strike could begin).

---

[4] As noted, in deciding a Rule 12(c) motion, it is appropriate for the Court to consider documents that are not attached to the complaint where "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Ritchie*, 342 F.3d at 908.  Although Stellantis attaches only Letter 311 to its complaint, it refers extensively to other provisions of the CBA, which otherwise form the basis of Stellantis's claims.  *See, e.g.*, Compl. at 3; Compl. ¶¶2, 18-20, 30, 33-34, 41; Compl. at 13 ¶¶2-4.  Thus, the CBA is incorporated by reference into the complaint.

1    To be sure, the parties' CBA is somewhat unusual in this regard. Most collective

2    bargaining agreements prohibit mid-contract strikes and provide for the resolution of all

3    grievances through binding arbitration. But the parties made a different choice here,

4    exempting some grievances from both the arbitrator's jurisdiction *and* from the strike

5    prohibition. That the parties chose not to submit grievances over Letter 311 to an

6    arbitrator for final resolution does not confer authority on this Court to adjudicate the

7    merits of Local 230's grievances at Stellantis's request. Just as courts must refrain from

8    considering the merits of a grievance when determining whether to compel arbitration,

9    *see, e.g.*, *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960); *United*

10   *Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 585 (1960), the parties'

11   decision to allow the union to strike over unresolved grievances regarding Letter 311

12   prevents this Court from accepting Stellantis's invitation to opine on the grievances'

13   merits here, and thereby provide a result through litigation that Stellantis was not able to

14   achieve at the bargaining table.

15   **Third**, because the Unions' conduct is expressly authorized by the CBA, the

16   Unions cannot be acting in bad faith by engaging in that conduct. Insofar as the CBA

17   contains an implied covenant of good faith and fair dealing, the Court must still look to

18   the express terms of the contract to determine whether such covenant has been violated.

19   *See, e.g.*, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 218 (1985) (explaining how "any

20   attempt to assess liability" on the basis of a "contractual obligation of good faith"

21   necessarily "involve[s] contract interpretation"); *Loc. 3-7, Int'l Woodworkers of Am. v.*

22   *DAW Forest Prod. Co.*, 833 F.2d 789, 795 (9th Cir. 1987) ("[W]hether a [particular]

23   duty … is part of the implied duty of good faith and fair dealing can only be answered in

24   light of the factual setting of the [contract]."). Given that the CBA expressly permits the

25   Unions to file grievances regarding Letter 311 and to strike over those grievances

26   regardless of their underlying merit, such conduct cannot possibly violate any covenant

27   of good faith implied in the CBA.

28   **Finally**, the Unions cannot violate the alleged implied covenant by engaging in

1   conduct that is protected by law.  As noted, the Unions have the First Amendment right to

2   engage in public speech about Letter 311.  *See supra* at 22.  The Unions also have broad

3   rights pursuant to section 7 of the National Labor Relations Act (NLRA), 29 U.S.C.

4   §157, to engage in concerted activity to protect their members' interests under Letter 311,

5   including by filing grievances, engaging in economic action, and speaking to the public.

6   *See, e.g.*, *N.L.R.B. v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967) (explaining how

7   the NLRA "creates a power vested in the chosen representative to act in the interests of

8   all employees," including "processing … grievances"); *N.L.R.B. v. Erie Resistor Corp.*,

9   373 U.S. 221, 233-35 (1963) ("[T]he right to strike is to be given a generous

10  interpretation within the scope of the [NLRA]."); *Old Dominion Branch No. 496, Nat.*

11  *Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 273 (1974) (noting that "the

12  NLRA … favor[s] uninhibited, robust, and wide-open debate in labor disputes").

13          Because the Unions can cede the foregoing rights only through "clear and

14  unmistakable" waivers, *Metro. Edison Co. v. N.L.R.B.*, 460 U.S. 693, 708 (1983) ("[W]e

15  will not infer from a general contractual provision that the parties intended to waive a

16  statutorily protected right unless the undertaking is 'explicitly stated.'"); *see, e.g.*, *Curtis*

17  *Pub. Co. v. Butts*, 388 U.S. 130, 145 (1967) (plurality opinion) ("We are unwilling to find

18  waiver [of First Amendment rights] in circumstances which fall short of being clear and

19  compelling."), any *implied* covenant incorporated in the CBA cannot preclude the Unions

20  from engaging in such protected conduct.

21          In sum, then, the relief that Stellantis seeks is contrary to the plain terms of the

22  CBA, and that relief must be denied.

23                                  **CONCLUSION**

24          For the foregoing reasons, the complaint should be dismissed.

25

26

27

28

1    Dated: November 27, 2024              Respectfully submitted,

2                                          */s/ Stacey M. Leyton*

3                                          Stacey M. Leyton

4                                          Stacey M. Leyton

5                                          Eileen B. Goldsmith

6                                          Juhyung Harold Lee
                                           Altshuler Berzon LLP

7                                          177 Post St., Suite 300

8                                          San Francisco, CA 94108
                                           Telephone: (415) 421-7151

9                                          Facsimile: (415) 362-8064

10                                         Benjamin L. King (*pro hac vice forthcoming*)

11                                         McKnight, Canzano, Smith, Radtke &
                                               Brault, P.C.

12                                         3950 West 11 Mile Road

13                                         Berkley, MI 48072
                                           Telephone: (248) 354-9650

14                                         Facsimile: (248) 354-9656

15

16                                         *Attorneys for Defendants*
                                               *UAW and UAW Local 230*

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendants UAW and UAW Local 230 certifies that this brief contains 6,991 words, which complies with the word limit of Local Rule 11-6.1.

Dated: November 27, 2024              */s/ Stacey M. Leyton*
                                      Stacey M. Leyton